IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ARMANDO MARTINEZ,

        Petitioner,

v.                                   No. 1:21-cv-0848 MV/DLM

RICHARD MARTINEZ and
ATTORNEY GENERAL
of the STATE of NEW MEXICO,

        Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Petitioner Armando Martinez's Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed October 10, 2023. (Doc. 30.) United States District Judge Martha Vázquez referred this case to me pursuant to 28 U.S.C. § 636(b)(1)(B) and (b)(3) to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court an ultimate disposition. (Doc. 18.)

Petitioner has filed an amended habeas corpus petition alleging four grounds for relief. I recommend denying his Amended Petition for failure to demonstrate that the underlying state-court decisions were unreasonable.

    **I.**      **Factual and Procedural Background**

On June 18, 2015, a jury found Petitioner guilty of two counts of second-degree criminal sexual penetration (CSP) and individual counts of false imprisonment and aggravated battery. (Doc. 8-1 at 124–27.) Petitioner appealed, arguing that:

1. Petitioner was incompetent to stand trial;

2. the State failed to prove false imprisonment, or alternatively, punishing false imprisonment and CSP constitutes double jeopardy;

3. Petitioner did not voluntarily waive his rights, and the investigating detective coerced the confession; and

4. trial counsel was ineffective for failing to recognize the relevance of Petitioner's mental capacity diagnosis to the voluntariness inquiry and as a defense at trial.

(*Id.* at 270–304.)

The state court of appeals affirmed as to the first three issues. (*Id.* at 360–78.) As to Petitioner's ineffective assistance claim, the New Mexico Court of Appeals noted the New Mexico Supreme Court's "preference for habeas corpus proceedings" to address such claims and instructed Petitioner to initiate habeas proceedings "if he [was] so inclined." (*Id.* at 378.) On July 11, 2018, Petitioner filed a pro se state habeas corpus petition, and habeas counsel filed a supplement on October 28, 2019, arguing that:

1) his trial counsel was ineffective for failing to challenge the voluntariness of the *Miranda* waiver and subsequent statements at trial; and

2) his trial counsel was ineffective for failing to present an expert witness on the issue of voluntariness at trial.

(*Id.* at 410–14, 497–508.)

The state habeas court found that trial counsel performed deficiently in not calling an expert and in failing to request a mental-capacity jury instruction. (*Id.* at 525.) The court found, however, that the evidence before the jury, including the testimony of the investigating officer and the victim herself, was compelling enough to prove the offenses charged even without Petitioner's confession. (*Id.*) The court, therefore, concluded that Petitioner was not prejudiced by his attorney's deficient performance. (*Id.*) On June 4, 2021, the New Mexico Supreme Court denied Petitioner's petition for writ of certiorari. (*Id.* at 653.)

On August 27, 2021, Petitioner filed a § 2254 federal habeas petition asserting the following seven grounds for relief:

1) Petitioner was incompetent to stand trial.

2) The state failed to prove restraint for false imprisonment.

3) Punishing both false imprisonment and CSP constituted double jeopardy.

4) Petitioner did not voluntarily waive his right to silence, and the interrogation tactics rendered his statements involuntary.

5) Trial counsel was ineffective for failing to argue that Petitioner's cognitive abilities rendered his statements involuntary either at the suppression stage or when the issue was before the jury.

6) Trial counsel was ineffective for failing to call an expert to challenge the voluntariness of Petitioner's statements either at the suppression stage or when the issue was before the jury.

7) Petitioner is actually innocent of the crime of CSP.

(Doc. 1 at 2–16.)

On June 13, 2023, the undersigned filed a PFRD that recommended finding Grounds 1–4 were exhausted completely and Grounds 5 and 6 were exhausted only as they related to trial. (Doc. 19 at 1.) The PFRD recommended finding that Grounds 5 and 6 were otherwise unexhausted and Ground 7 was entirely unexhausted. (*Id.*) On June 26, 2023, Petitioner filed a Notice of Dismissal, dismissing the claims the Court found were unexhausted. (Doc. 20.) Judge Vázquez adopted the PFRD in part, excluding only the portion of the PFRD recommending Petitioner be granted 30 days to dismiss his unexhausted claims. (Doc. 21.) After a series of extensions, Petitioner filed his Amended Petition on October 10, 2023. (Doc. 30.)

The Amended Complaint presents the following four grounds for relief:

3

1) Petitioner alleges his constitutional right to due process was violated because he was tried while incompetent;

2a) Petitioner alleges he was denied due process because he was convicted of false imprisonment despite the State's alleged failure to prove all essential elements of the offense;

2b) Petitioner alleges his convictions for false imprisonment and CSPviolate the prohibition against double jeopardy.

3) Petitioner alleges his statements to police were involuntary and made in violation of due process, because he was incapable of validly waiving his *Miranda* rights due to his intellectual disability; and

4) Petitioner alleges trial counsel was ineffective for failing to argue or present expert testimony that his intellectual disability rendered his statements involuntary.[1]

(Docs. 30 at 11–12; 34 at 2.)  Respondents filed their Answer Brief on November 7, 2023. (Doc. 35.) Petitioner did not file a reply.

## II.     The Law Governing § 2254 Claims

A prisoner in state custody seeking federal habeas corpus relief under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), faces a "formidable barrier to [obtaining] federal habeas relief . . . ." *Burt v. Titlow*, 571 U.S. 12, 19 (2013) (explaining that AEDPA's amendments create a high threshold for relief because "state courts have the solemn responsibility equally with the federal courts to safeguard constitutional rights" and are "presumptively competent" to do so) (quotation marks and citations omitted). Indeed, the Supreme Court has stated repeatedly that the standard by which federal courts are to review state court rulings is a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (quoting *Lindh*); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford*).

---

[1] Petitioner does not list his claims; instead, he merely refers to his remaining claims as being "organized into four claims—Claims 2 and 3 are combined; in addition, Claims 5 and 6 are combined." (Doc. 30 at 11–12.) Respondents, however, synthetize Petitioner's remaining claims into the list above. (Doc. 34 at 2.)

To carry his burden under that exacting standard, a prisoner's habeas corpus petition must show that the state court decision "(1) was contrary to, or involved an unreasonable application of, clearly established federal law or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding." *Cortez-Lazcano v. Whitten*, 81 F.4th 1074, 1082 (10th Cir. 2023) (quoting 28 U.S.C. § 2254(d)) (quotation marks and brackets omitted).

"Clearly established law" refers to Supreme Court holdings at the time of the state-court decision. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to, or involves an unreasonable application of, clearly-established law if it applies a rule contradicting law set out by a Supreme Court decision, or if it is faced with a set of facts "materially indistinguishable from" facts the Supreme Court has previously considered but arrives at a different conclusion than the Supreme Court. *See id.* at 405–06.

To highlight the deference owed to state court decisions, the Supreme Court has stated that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams*, 529 at 410). In other words, to establish an *unreasonable* application of federal law, a petitioner must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Burt*, 571 U.S. at 19–20 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). Accordingly, a federal court may not grant a § 2254 petition simply because it "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Torres v. Mullin*, 317 F.3d 1145, 1151 (10th Cir. 2003) (quoting *Williams*, 529 at 409). Indeed, "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102 (citation omitted). "If this standard is difficult to meet, that is because it was meant

5

to be." *See id.* "As amended by AEDPA, § 2254(d) . . . preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no further." *Id.* (citation omitted) (emphasis added).

The standard of review for reviewing a state court's factual determinations mirrors the standard for analyzing the application of federal law. A federal court may not "conclude a state court's factual findings are unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" *Smith v. Duckworth*, 824 F.3d 1233, 1241 (10th Cir. 2016) (quoting *Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015)). "Rather, [a federal court] must defer to the state court's factual determinations so long as 'reasonable minds reviewing the record might disagree about the finding in question.'" *Id.* (quoting *Brumfield*, 576 U.S. at 313–14). "Accordingly, a state court's factual findings are presumed correct, and the petitioner bears the burden of rebutting that presumption by 'clear and convincing evidence.'" *Id.* (quoting 22 U.S.C. § 2254(e)(1)). However, if a petitioner shows that the state court plainly misapprehended or misstated a material factual issue that is central to his claim, the fact-finding process is fatally undermined and that finding of fact is unreasonable. *Id.* (discussing *Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 739 (10th Cir. 2016)).

### III.     Petitioner is not entitled to § 2254 relief.

Whether Petitioner will prevail depends on his ability to demonstrate that the trial court's decision was based on an unreasonable application of federal law or an unreasonable finding of fact. As stated above, however, that standard is incredibly difficult to satisfy and for good reason. State courts are entrusted with the same responsibility to protect constitutional rights as federal courts, and consistent with the principle of equal sovereignty, they are presumed competent to do

so. Their fact-finding is also presumptively sound. Only when a petitioner demonstrates there is no possibility of fairminded disagreement may a federal court find that a state court applied federal law unreasonably or made an unreasonable finding of fact. The Court finds that Petitioner did not meet his burden of demonstrating the trial court applied federal law unreasonably or made an unreasonable finding of fact. Accordingly, the Court recommends denying his petition.

### A. Petitioner did not present evidence that the state district court unreasonably determined he was competent to stand trial.

Petitioner's first argument is that the trial court erred in finding him competent to stand trial despite having been found to be intellectually disabled.[2] (Doc. 30 at 12–13.) Petitioner argues that he "lacked the intellectual capacity to provide reasonable assistance to his attorney in preparation for and during trial[, and therefore,] . . . his conviction constitutes a violation of due process." (*Id.* at 13.) On February 6, 2015, the state district court held a competency evaluation hearing during which clinical and forensic psychologist Susan Cave Ph.D. was recognized as an expert and opined that Petitioner was legally intellectually disabled, unlikely to improve, not competent to stand trial, and not treatable to competency. (Competency evaluation hearing at 49:30–50:00; 54:00–55:50.)[3] On cross examination, however, Dr. Cave confirmed that Petitioner understood he was charged with felonies; that felonies are more serious than misdemeanors; he would give up certain rights if he pled guilty; and he was not required to testify. (*Id.* at 1:00:00–

---

[2] The Court notes that the parties use the term "mental retardation" throughout the briefing to reflect the state court's usage of the same. In 2013, however, the American Psychiatric Association updated the term for the diagnosis of "mental retardation" to "intellectual disability" in the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders. *See* American Psychiatric Association, Intellectual Disability (2013), https://www.psychiatry.org/File%20Library/Psychiatrists/Practice/DSM/APA_DSM-5-Intellectual-Disability.pdf. The Court will use the term "intellectual disability" in brackets in place of "mental retardation," but it refers to the same diagnosis.

[3] The Court listened to the CD that Respondents submitted to the Clerk of Court on November 7, 2023. (Doc. 35.) The Respondents' cite to the time of day during which the hearing took place—e.g., 15:59:33 refers to 3:59:33 pm. (*See* Doc. 34 at 6.) On the CD, however, the competency hearing was divided into three segments, so Respondents' citation format does not align with the recordings. Accordingly, the Court will refer to the audio timestamp of the file on the CD titled: "FTR COURTROOM 353_20150206-1519_01d0422042793210."

7

1:02:05; 1:02:22–1:02:32.) Dr. Cave further confirmed that Petitioner defined "evidence" as "proof." (*Id.* at 1:02:10–1:02:21.) She also acknowledged he had been convicted in other proceedings during which his competency was not raised. (*Id.* at 1:11:45–1:12:06.)

The state district court found that Petitioner did not demonstrate he was incompetent. The court reasoned that although Petitioner has "subaverage intellectual functioning[,]" he does not have "a deficit in adaptive behavior." (Doc. 8-1 at 10.) The court further determined that the presumption of intellectual disability was overcome by Petitioner's "level of adaptive functioning along with his performance on the Competency Assessment Inventory." (*Id.*) Following conviction and on appeal, the New Mexico Court of Appeals "dispensed with the notion that the district court was required to accept Dr. Cave's" conclusion as to Petitioner's incompetence. (*Id.* at 363.) The court of appeals specifically highlighted that "[intellectual disability] in and of itself, is not conclusive evidence that a defendant is incompetent." (*Id.* at 362 (quoting *New Mexico v. Linares*, 393 P.3d 691, 697 (N.M. 2017)).) Indeed, the court of appeals determined that Dr. Cave's own testimony provided support for the district court's determination that Petitioner was competent to stand trial. (*Id.* at 364–66 (discussing Petitioner's awareness and understanding of the proceedings, his role in them, and the potential consequences).) The New Mexico Supreme Court then denied discretionary review. (*Id.* at 407.)

"[T]he test [for determining competency] must be whether [a petitioner] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (quotation marks omitted); *see Lafferty v. Cook*, 949 F.2d 1546, 1550 (10th Cir. 1991) (noting that the Supreme Court has indicated that the standard above applies to "federal habeas review of state proceedings"). "To prove incompetency to stand

8

trial, the defendant must prove incompetency by a preponderance of the evidence." *United States v. Williamson*, No. CR 11-2784 JB, 2013 WL 1658021 at *24 (D.N.M. Mar. 20, 2013) (citing *Allen v. Mullin*, 368 F.3d 1220, 1239 (10th Cir. 2004)). In *United States v. Lewis*, District Judge James O. Browning highlighted that "[t]here is no consistent correlation between a clinical diagnosis of intellectual disability and a legal finding of incompetency to stand trial." No. CR 21-0660 JB, 2023 WL 4976402 at *12 (D.N.M. Aug. 3, 2023) (noting that "a defendant's competency to stand trial is a legal inquiry, not a medical inquiry, and the judge is the expert on what mental capabilities the litigant needs in order to be able to assist in the conduct of the litigation") (quoting *McManus v. Neal*, 779 F.3d 634, 658 (7th Cir. 2015) (quotation marks omitted)). Although a finding "of intellectual disability makes the death penalty an unconstitutional punishment[,]" such a finding is not dispositive of competency to stand trial. *Id.* (citing *Atkins v. Virginia*, 536 U.S. 304 (2002)).

      The Court acknowledges that Petitioner has an intellectual disability but nevertheless finds that the state district court did not unreasonably determine he was competent to stand trial. Based on Dr. Cave's testimony at the competency evaluation hearing, the Court finds that Petitioner displayed a "reasonable degree of rational understanding" and "a rational as well as factual understanding" of both the charges he faced and the consequences of being convicted for those charges. *See Lewis*, 2023 WL 4976402 at *14 (quoting *Dusky*, 362 U.S. at 402). Petitioner may have an intellectual disability, but the competency requirement "has a modest aim: It seeks to ensure that [Petitioner] has the capacity to understand the proceedings and to assist counsel." *Godinez v. Moran*, 509 U.S. 389, 402 (1993) (opining that "[w]hile psychiatrists and scholars may find it useful to classify the various kinds and degrees of competence, and while States are free to adopt competency standards that are more elaborate than the *Dusky* formulation, the Due Process

Clause does not impose these additional requirements") (citation omitted). The Court finds that the state district court's determination achieved that modest aim. Accordingly, the Court finds that Petitioner failed to demonstrate the state court unreasonably applied clearly established federal law or made an unreasonable finding of fact.

### B. Petitioner did not demonstrate that the State failed to prove every essential element of false imprisonment or that he was subject to double jeopardy.

Petitioner's second argument is that his conduct did not meet the essential elements of false imprisonment because it was incidental to the underlying crime of CSP; accordingly, Petitioner alleges, his convictions for both crimes violate the prohibition against double jeopardy. (Doc. 30 at 13–15.)

"[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). The inquiry, however, does not concern whether the reviewing court itself believes the evidence established guilt or the logic by which the trier of fact reached its conclusion. *See id.* at 318–19; *Torres v. Mullin*, 317 F.3d 1145, 1151 (10th Cir. 2003). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citation omitted).

"[T]he Fifth Amendment guarantee against double jeopardy . . . protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (*overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989)). "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision

10

requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (citation omitted). To make that determination, a federal habeas court must "defer to the state court's interpretation of the relevant statutory provisions." *Lucero v. Kerby*, 133 F.3d 1299, 1316 (10th Cir. 1998) (citations omitted). New Mexico uses the following two-part test to determine legislative intent:

> The first part of our inquiry asks the question that Supreme Court precedents assume to be true: whether the conduct underlying the offenses is unitary, *i.e.*, whether the same conduct violates both statutes. The second part focuses on the statutes at issue to determine whether the legislature intended to create separately punishable offenses. Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial.

*Swafford v. New Mexico*, 810 P.2d 1223, 1233 (N.M. 1991). Determining whether two events are separate offenses depends on the time and space between the events and "the quality and nature of the acts or . . . the objects and results involved." *Id.* at 1234 (citation omitted). However, "if the conduct is separate and distinct, inquiry is at an end." *Id.*; *see also New Mexico v. Silvas*, 343 P.3d 616, 619 (N.M. 2015) ("If the conduct is not unitary, the analysis ends and double jeopardy does not apply.") (citation omitted).

The Court finds that a reasonable trier of fact could have found the essential elements of false imprisonment were met. Because the essential elements of false imprisonment were met, a reasonable trier of fact could have found the crimes were not unitary—i.e., they were separate offenses. Accordingly, the court also finds that a reasonable trier of fact could have found that the convictions for false imprisonment and CSP did not violate double jeopardy. Petitioner, however, argues that the Court should extend the principle in *New Mexico v. Trujillo*, 289 P.3d 238 (N.M. Ct. App. 2012), to false imprisonment. (Doc. 30 at 13–15.) In *Trujillo*, the Court of Appeals of New Mexico held that kidnapping could not be charged where the restraint involved was merely

incidental to the underlying crime of battery. 289 P.3d at 250–51. In *New Mexico v. Lucero*, the Court of Appeals of New Mexico considered whether to extend the incidental-restraint limitation on kidnapping established in *Trujillo* to false imprisonment and declined to do so. No. A-1-CA-35407, 2019 WL 5926983, at *2 (N.M. Ct. App. 2019) (*cert. denied* S-1-SC-38003, 2019 WL 11693101 at *1 (N.M. 2019)) ("[W]e are unpersuaded by Defendant's argument that we should apply Trujillo to false imprisonment . . . ."). The court in *Lucero* nevertheless analyzed the claim and determined that "[b]ecause discrete acts underlie the convictions and because the offenses were completed at different points in time, the restraint was not merely incidental to the battery and was therefore not unitary." *Id.* (citations omitted).

Similarly, here, Petitioner committed the crimes of false imprisonment and CSP at different times. Petitioner forced his way into the victim's room, entered the bathroom where she was brushing her teeth, grabbed her, threw her to the floor, pinned her down, and raped her. (Doc. 8-1 at 520.) As Petitioner walked away and the victim was heading to the phone, he grabbed her again, threw her to the floor again, and raped her again. (*Id.*) Petitioner then left the room for about one minute, during which time the victim called the police. (*Id.*) When 911 called back, he answered the call, said everything was fine, threw the phone against the wall, and threw the victim on the bed and beat her. (*Id.*) The court of appeals found false imprisonment occurred once Petitioner had thrown the victim to the floor before the first time he raped her. (*Id.* at 373–76.) Alternatively, the court determined that false imprisonment could also have occurred after he threw the victim on the bed, punched her, and choked her because she was confined against her will. (*Id.* at 376.)

As an initial matter, in *Lucero*, the Court of Appeals of New Mexico already rejected Petitioner's argument that *Trujillo* should extend to false imprisonment, and not only are federal courts "bound by the state courts' interpretation of the state's laws[, but i]f the state's highest court

12

has not decided an issue, [a federal court's] task is to predict how it would rule." *Taylor v. Powell*, 7 F.4th 920, 932–32 (10th Cir. 2021) (quotation marks and citations omitted). Although *Lucero* is not a precedential case, it *is* instructive of how a New Mexico court would interpret a nearly identical case. Additionally, although the denial of certiorari is certainly not dispositive, the Court is required to predict how the New Mexico Supreme Court would rule, and the denial of certiorari at least provides some indication the New Mexico Supreme Court saw no error with the decision and would affirm similar reasoning if it were applied in Petitioner's case.

In any event, consistent with *Lucero*, the court of appeals in this case determined that discrete events underlie the offenses and the offenses were completed at different times. (Doc. 8-1 at 373–76.) In other words, the offenses were not unitary and all essential elements of false imprisonment and CSP were met, meaning that both convictions were for distinct offenses and do not violate the prohibition against double jeopardy. Accordingly, the Court finds that Petitioner failed to demonstrate that the state district court unreasonably applied clearly established federal law or made an unreasonable finding of fact in convicting him of false imprisonment and CSP.

### C. Petitioner did not demonstrate the state court unreasonably determined that he voluntarily waived his right to remain silent.

Petitioner's third argument is that "[d]ue to [his] severe intellectual deficiency, he was in no way capable of waiving his *Miranda* rights." (Doc. 30 at 16.) As an initial matter, Petitioner does not identify any clearly established federal law to support that claim, which is sufficient to deny habeas relief. *See Grant v. Royal*, 886 F.3d 874, 889 (10th Cir. 2018) ("The absence of clearly established federal law is dispositive under § 2254(d)(1) and results in the denial of habeas relief.") (quotation marks and citation omitted). The Court nevertheless finds that Petitioner failed to demonstrate the state court unreasonably determined he voluntarily waived his right to remain silent.

"While the defendant's mental condition is an important consideration, to find a statement involuntary, the police must somehow overreach by exploiting a weakness or condition *known to exist*." *United States v. Guerro*, 983 F.2d 1001, 1004 (10th Cir. 1993) (citations omitted) (emphasis added). In other words, although a person's individual characteristics and the circumstances under which he was interviewed are relevant, those "factors must be considered in relation to the tactics employed by the police to determine if police took unfair advantage of a defendant's traits or the surrounding circumstances." *Id.* Petitioner "appeared coherent" to the interviewing detective, and Petitioner himself concedes that the detective "knew nothing about [his] mental wherewithal" and "did not notice anything concerning his mental capacity." (Doc. 8-1 at 293, 368). In holding that Petitioner waived his right voluntarily, the New Mexico Court of Appeals noted Petitioner did not argue he was "subjected to any official intimidation, coercion, or deception . . . and the record [did] not reveal any." (*Id.* at 368.) In other words, the court of appeals' decision was consistent with *Guerro*, which requires a finding that the police exploit a condition that is *known to exist*. *See Guerro*, 983 F.2d at 1004. Accordingly, Petitioner failed to demonstrate the court of appeals unreasonably applied clearly established federal law or made an unreasonable finding of fact in finding that he voluntarily waived his right to remain silent.

### D. Petitioner does not demonstrate that the state habeas court unreasonably denied his ineffective assistance of counsel claim.

Petitioner repeats arguments the state habeas court already rejected but does not argue that the state habeas court unreasonably applied *Strickland* or unreasonably determined the facts. (*See* Docs. 30 at 8–9; 8-1 at 504–07, 525.) To succeed on an ineffective assistance of counsel claim, a petitioner must show 1) that he received substandard representation and 2) that, but for the substandard representation, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Critically, however, "[i]n order to succeed on an

14

ineffective-assistance claim, a petitioner must satisfy both prongs of the Strickland test." *Ellis v. Raemisch*, 872 F.3d 1064, 1085 (10th Cir. 2017) (citing *Strickland*, 466 U.S. at 687). Petitioner prevailed on the first prong before the state habeas court, but the habeas court denied his ineffective assistance of counsel claim for failure to demonstrate he was prejudiced by the ineffective assistance he received. (Doc. 8-1 at 525.) The state habeas court determined that the detective and victim's testimony "was very compelling[, t]he victim's testimony alone prove[d] the offenses charged[, and e]ven if the confession . . . had been excluded, there would have been sufficient evidence to convict . . . ." (*Id.*) Because Petitioner does not argue that the state habeas court unreasonably applied *Strickland* in finding he was not prejudiced, or that it made an unreasonable finding of fact in denying his claim, the Court finds that he did not demonstrate he is entitled to federal habeas relief.

### IV.     Recommendation

The standard for a petitioner to demonstrate he is entitled to federal habeas relief requires a federal court to do more than disagree with a state court decision or even find that the state court's decision was incorrect. A federal court must determine that the state court applied clearly established federal law in such a manner that *no one* could disagree that the outcome was directly contrary to Supreme Court precedent. Similarly, to find a state court's findings of fact were unreasonable, a federal court must determine that *no one* could disagree that the state court misapprehended a fact central to the petitioner's claim. As the Court highlighted above, these standards are intentionally difficult to satisfy because state courts are entrusted with the same responsibility to safeguard constitutional rights as federal courts and are presumed to be competent to make findings of fact.

Petitioner failed to satisfy either standard in the arguments he made in support of his four

grounds for relief. The Court was not persuaded that the state courts' decisions or findings of fact were wrong, let alone that they applied clearly established federal law or made findings of fact unreasonably. Accordingly, the Court recommends denying Petitioner's Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. (Doc. 30.)

**THEREFORE, IT IS RECOMMENDED** that Petitioner's Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody be **DENIED**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE